This video was made in Cooperation with the U.S. Department of Health and Human Services.  This video was made in Cooperation with the U.S. Department of Health and Human Services. Our position is that the 375 patent should be a double patenting reference because it expires first. Our position is based on the fundamental principle that the double patenting doctrine does not permit two or more substantially duplicative patents unless two conditions are met. One, that the patents are commonly owned throughout the entire period of enforceability. Two, that they expire at the same time. The only way to accomplish those objectives is by a terminal disclaimer of the later expiring patent. Is your response, I mean the other side cites a lot of cases and a lot of language in those earlier cases that talk about first issued, always expired first, and so forth. Is it your view that all of that language is mooted out, or not mooted, but is subject to the fact that that arose in the pre-GATT versus post-GATT scenario, and therefore that language isn't something we're bound by literally? I think that's right because you could substitute issuance date with expiration date in each of those cases and get the same result. But isn't the primary purpose here to prevent patent term extension, and there's not going to be any extension here? Well, I think the 375 patent has been extended by 22 months by virtue of the 483 patent. And I think that's why there are three important things to keep in mind. First, terminal disclaimers are the only statutory mechanism. They're separate patents, of course, so one patent does not extend the term of the other patent. Because what we have here is two patents claiming substantially identical subject matter, we have the problem of double patenting. One, because they expire at different times, and to paraphrase Judge Rich, in that case it doesn't permit the public to act on the assumption that once the 375 patent expires, then that invention becomes part of the public domain. And without a terminal disclaimer, it does not ensure common ownership throughout the entire period of enforceability, because if that terminal disclaimer, for example, as it was in this case, was filed with the earlier expiring patent, you would still have a situation where those patents would not be commonly owned through the entire period of enforceability. And you would have the situation where the same invention would be covered by different patents with different expiration dates. And I think it's also important to keep in mind the legislative history behind Section 103C, where Congress unequivocally asked the judiciary to continue to apply the double patenting doctrine to ensure that the same organization doesn't have two or more patents that claim substantial identical subject matter with different expiration dates. And I think those PREGAD cases all stand for that proposition. Even if we were somehow to agree with everywhere you've taken us in this case and in your briefs, what are we to do with the fact that the examiner here – I mean, your view is that the examiner should have knocked this out at the get-go, right? He should have taken care of this at the get-go. And for whatever reason, he did not do that. That's your view. Isn't the other side sort of prejudiced by that? I mean, because if the examiner had raised this issue of a terminal disclaimer, they would have had the ability to withdraw the 375, in which case they would have gotten the expiration date of 2016, which they're here fighting for. So even if we buy you theory, policy, law on the double patenting, don't we have a problem with reversal here because of that glitch or whatever we want to call it? Well, I don't think it's a problem for a couple reasons. One, this Court has stated that the double patenting doctrine prevents this situation no matter how that situation came about. So it's not about whether it's anybody's fault or not. But I do think it's important for patentees in Gilead's situation. But what about Judge Crow's point? They could have disclaimed if they had been confronted with this problem, and then they would have the full term of the 483. That would have been their option. Had the examiner raised the issue or had they raised it themselves. And that would have been automatic because, of course, they have a longer patent with the 483 than the 375. With the exception that the 375 is a genus patent. So it does have some broader coverage than the 483 patent. So it's not as if they get everything in the 483 patent and the 375 patent as if they were identical. They are of some different scope. I mean, in this situation, the classic 375 patent's a genus, 483 patent's a species. So they aren't identical. We're talking about an obvious one, which doesn't have a statutory basis. That's correct. Just a judicial doctrine, as you understand. That's correct. Does that address it? So your answer is it doesn't matter? It doesn't matter at the end of the day how the double patenting situation came about. What matters is we have two duplicative patents with different expiration dates. That triggers the non-alienation of the common ownership bond. But in this case, the fairness cuts against your argument. The fairness would have entitled the owner to disclaim the 375 as a double patenting prior art reference. And they would have then had the full term of the 483. Right. That was their option. They could either terminally disclaim the 483 patent to fix the double patenting problem, or during the prosecution stage, they could have either argued over double patenting to traverse it, they could have changed the claims to fix the double patenting, or if they wanted that longer term to entirely abandon the 375 patent application altogether. But it's not as if they didn't get everything that was statutorily prescribed. I mean, let's remember they did get their full 20-year term in the 375 patent. What they're now getting is an additional 22 months for continuing that invention in the 483 patent. So it's not as if they're not getting... It's not the same invention. There's not complete overlap. That's why it's obvious in this type of double patenting. It would be our burden to go back to the lower court and approve double patenting based on the genus. If these claims are obvious versions of each other, then they could have all been thrown together into a single patent. Is that right? Well, certainly we think that would be the case. And that issue typically arises... if, in fact, it's true that one is an obvious version of the other. We do. And what we've heard from Gilead is the reason that they filed these in separate families was so they could avoid the gap cutoff, so they could file a provisional application and perhaps take advantage of getting a longer term. But that typically arises in the context of does the two-way test apply? Could they be raised as part of the same application? And was the delay solely attributable to the patent office and not anything of the patentee? But I still think that at the end of the day, the court's statement is that double patenting should be fixed by terminal disclaimer or prevented at the patent office, no matter how it actually came about. So is that your response to the other side's argument that they had a right post-gap to file a provisional first, then a non-provisional, thereby get the benefit of pushing the expiration date down the line? Well, that's what they say. We haven't had discovery in this case. This was purely a question of law that was raised on summary judgment. As legal matter applicants have that right in the post-gap world. That's what they say. I've had no ability to test that other than this is what they presented. And even if that were true, I still think at the end of the day it doesn't matter because what we have here are two duplicative patents, substantially duplicative, with different expiration dates. And that triggers the non-alienation policy of this court. That triggers the public's ability or inability in this case to act on the assumption that once the 375 patent expires, then that invention becomes part of the public domain. And what you're seeking, you're seeking summary judgment reversal and then summary judgment in your favor. You're not seeking a trial or a remand, right? What we're seeking is to go back to the lower court and be able to prove double patenting using the 375 patent as a reference, which is what we've been unable to do now as a matter of law. Would reversal here basically lead to invalidation of the 483? Or could they file a terminal disclaimer in 483 after a ruling by this court? They could file a terminal disclaimer because this court would not rule on the validity or invalidity of the 483 patent. This court would basically say that the 375 patent can qualify as a double patenting reference in this situation or really in any situation going forward post-GATT. I mean, I think it's something that both parties have recognized that this post-GATT issue has been something that hasn't specifically been addressed by this court. I think the closest this court came to actually addressing it, and excuse my French, is the In re Valix case. Now that case, of course, dealt with the non-alienation policy, the common ownership policy, but what Judge Moore said in that case and what she taught us more generally was about the continued applicability of the double patenting doctrine post-GATT in the context of common ownership. And the example she gave was when you have two applications that are part of the same family, so they have the same effective filing date, where one application has been extended by a patent term adjustment or a statutory term extension and the duplicative patent has not, that's still a double patenting problem. And the reason is because now you have substantially identical patents with different expiration dates. Now you have the non-alienation problem. Now you have the public policy issue of whether or not the public can act on its assumption that once the patent expires, that invention becomes part of the public domain. And I think, just to be clear, to act on the assumption means that the public need not go looking for duplicative patents with later expiration dates. Otherwise, it wouldn't be an assumption at all. So I think FOLIX stands for the proposition, and that was a 2009 case, stands for the proposition that I started out with that the double patenting doctrine does not permit two or more substantially duplicative patents unless there's common ownership throughout the entire period of enforceability and unless they expire at the same time. Typically, when a patent is granted, you have all the information you need right then and there to know definitively what the term of that patent is going to be. If we were to go to your way, we're kind of caught in a little bit of a no-man's land when the 483 patent issues, because we don't know yet. We might provisionally believe that there could be a patent term that ends in 2016, but we have to wait and see. We have to wait and see if there's some other application that's percolating in the agency that ultimately issues, and then if it does, then at that point in time, it could be years after the grant of the 483. Now we all have to go run back and do a recalculation. If we're not talking about common ownership, presumably that issue would be taken care of under the prior art standards because you would not have a situation where you'd have duplicative patents claiming the same subject matter. The only time that can ever happen is in the obviousness type double patenting context when there's a terminal disclaimer. That is when they're commonly owned throughout the entire period of enforceability and when they expire at the same time. Otherwise, it is a one patent per invention world. The same would be true in statutory double patenting. The same would be true in obviousness type double patenting when terminal disclaimers are not available, which was the actual outcome of the Enri Follix case. Would you like to save some of your rebuttal time? Yes, please. Thank you very much. Thank you, Mr. Law. Ms. Ben-Ami. Good morning, Your Honor. Good morning. May it please the Court, Leora Ben-Ami for appellees. First, Your Honor, it's our position that this Court should follow the Supreme Court decisions and the other decisions of this Court and consider the first issue patent the reference patent. I think that's the law of the Supreme Court and of this Court. It has been the law. And to change that now, we believe, would require Supreme Court ruling. But in the pre-cat world, the last issued was always the last expiring. I mean, none of this stuff mattered in that case. That wasn't the rule. So you're asking us, I appreciate what the language might have said, but these questions were never in play in those circumstances. Am I wrong about that? I think that's generally true. I could probably envision some situation where something might happen, but I think the point is different here. All those cases are premised on the issue of a property right. There are two fundamental mistakes in Natko's argument. It equates a patent application, which is a request for a property right, with a property right, and it equates how you calculate the expiration date of a patent with the term of a patent. Those issues are very important in this case. We need to start with the Patent Act. Section 154 of the Patent Act tells us when a patent exists. We all know this. I don't have to read that to you. A patent exists after it's allowed. You pay the issued fee. You get to the end. You get your patent. It says you have the right to exclude. Up until that date, there is no property right. Then the statute in 154B specifically tells you what the term of that patent will be. It states that the term is from the beginning of that patent issuance, whatever that date may be, expiring 20 years after filing. That is the term of the property right. If we understand that to be the term of the property right, then what are we in the public to make of the fact that you have the 375 patent, which has certain claims, and you look at it and say, okay, this is the scope. This is the property right, and this is the scope of the property right. Come whatever date in 2015, that is now dedicated to the public. Isn't that the essence of whatever property right you get, and isn't that a problem, therefore, for you? Isn't that why we're here debating these issues and these policy issues? No. Because the property right in 375, once the patent expires, is dedicated to the public, is it not? No. No, it's not? No, it's not. Because you can look at, say you have a genus patent, and you have a species patent, and the species is patently distinct from the genus. You can have a second patent that covers, you can have a genus patent that covers this box, and you can have a species patent that has a later date that covers that box. So it's not necessarily true. But more importantly, this court, by a judicial doctrine, cannot overrule a statute as a matter of law. The term of the 435 as the first issued patent is the term defined by statute. Then we go ahead and say if there is a later, that's the property right, and that property right can't change. It can't be a sliding scale, as Judge Chen just said, that maybe someday in the future you have a property right and you lose that property right. Because the double patenting doctrine is to prevent extension of the term, not shortening the term. Can I ask you a hypothetical? Yes. Right now your 375 expires 2015, your 483 expires 2016. Your 375 issuance was after the 483 issuance. Right. Your 483 issued June 9, 1998. What if the 375 patent issued June 8, 1998? So now the 375 patent issued first. What happens to the expiration date for the 483? If the 375 patent issued first, then the applicant would have to determine what it wanted to do with the patent application going to the 483. The patent applicant could have done many things in the patent office, including arguing it was patentably distinct. Okay, but assume they're not patently distinct. Or they would have had to disclaim. They would have filed a terminal disclaimer. They would have filed a TD. They could have. And I guess... They could have changed the claims. To me, isn't that a signal that there's something afoot here, that just by the randomness of when the 375 patent happens to issue, that'll determine whether or not the 483 patent's expiration date changes from the end of 2016 to the beginning of 2015? Maybe that's a signal that the issue date is no longer really the relevant trigger point. What we have to think about is the expiration dates for these two patents that we have to assume, for purposes of this appeal, are in fact obvious variations of each other. So I agree with you. For the purposes of this appeal, we're just dealing with the fact of this general issue. We're not getting to the merits of the obviousness. Right. When we understand that the 375, just by happenstance, issued before the 483, even one day before, then that truncates the 483 patent term. And likewise, you're telling me if the 375 patent issued one day after the 483 patent issued, then all of a sudden the 483 gets another two years of patent term. But that would be the same thing if we were in the pre-GATT world, because if I get patent one and it's 17 years from issuance and I get a second patent the next day, that is obvious based on the claims of the first one I have to terminally disclaim. So it always goes based on the issue date. It's the same thing. The fact of the matter is that the statute defines the term of the patent. The property right is when the patent issues. Then you say, does a second patent extend the term of the first patent? To go ahead and say, well, the 483 issued, and it has this term, and now because of a later patent we're going to shorten its date, is contrary to statute. Well, then what did we as a court do that was wrong in Wray-Lonky when we said when a patent expires, then that's notice to the public, that the public has the right to use everything that was claimed in that patent and obvious modifications of what was claimed in that patent. And that's the principle at bottom of the obviousness type double patenting doctrine. I think that's a general proposition of policy, Your Honor. I don't think that's the finding of that case. I think the general proposition. If you were to apply that principle to the facts of your case, that would tie the expiration dates for these two obvious variant patents of each other. I think if Your Honor wanted to go to a situation that says at any time during the life of the patent you look to see if there's any other patent that has a different expiration date, and then you put them all together and you say, I picked the shortest one, that would be a radical change in the law. Well, what you would be doing is you'd be tying all the expiration dates together. The same inventor, it's the same invention, or an obvious variation, common ownership. But theoretically all the claims of all these assorted patents could have been rolled up into a single patent and therefore would have had a single expiration date, and therefore likewise under the ODP doctrine the same would be true for these multiple patents owned by the same owner with the exact same inventor. In theory, if the law hadn't changed, many things could occur. However, we were in a situation where the law did change. And the law did change, the provisional practice came into being, the patent office was encouraging the use of the provisional practice, and that was what was done in this case. There is nothing wrong with what was done in this case. The applicant followed the MPEP at the time, not the MPEP that is cited in NACO's brief, which is a changed MPEP section. The MPEP at the time said the first to issue doesn't have a terminal disclaimer, the second one to issue has a terminal disclaimer. That's 804-1B1. I agree. At the time that these applications were pending, in the mid-90s, this was a novel legal issue. But at this point in time, you're, the MPEP right now, conflicts with your position, right? It says in situations like this you would file provisional ODP rejections in both of these applications. And then, given that the 483 issued first, you would have to file a terminal disclaimer in that 483 pending the outcome of 375. But there were no provisional double-patenting rejections in both the applications. Right. Does that mean there can never be an obviousness-type double-patenting challenge to a patent after it's been granted without an ODP rejection ever having been made before the agency? No, I was answering your question, Your Honor. Your question was, this is how it would have worked in the patent office. And my answer to your question was, the MPEP section that we're talking about refers to when there are two provisional double-packeting rejections. That MPEP section at the time said the first ready-to-issue doesn't get the terminal disclaimer, the second one does. In the mid-2000s or something like that, the patent office changed its guidance to examiners. Its guidance to examiners. That's what it changed. Whether that is in conflict with the statute, the Supreme Court doctrine, the doctrine of this Court, is not before this Court now because then we would have to determine whether there's agency discretion because it's a procedural rule or whether it's a conflict with the statute. That's not before us right now. What is before us right now is we were in a situation, if there had been a double-patenting rejection, the applicant had a lot of things the applicant could have done. The applicant could have said, I don't want the 375. Let's remember, at this time, Tamoglu, the drug at issue here, had already been approved by the FDA. Why would you take the 483 patent and then give up term with the second patent if the second patent could be used as a double-patenting reference? I'm sorry, I don't understand. Are you suggesting a rule that's perhaps a carve-out for people like in your situation where they weren't given the option at the time whether to abandon the 375 application but for all other instances where an applicant is presented with a choice because an obviousness-type double-patenting rejection is imposed, then it's okay to do what your opposing counsel wants in terms of understanding the law? No, I don't think that's right because I think it's still conflicts with the statute. Right, so it's either one or the other. In my view, well, no. I think it conflicts with the law and therefore that should be the end of the matter. However, if the court were to determine that this was some type of mixed doctrine and that post-gap we need to look at things in a different way, then I think we need to look at what happens to those people who are caught in the middle. That's what I'm saying. Because this would be a change in the law. There is no doubt this would be a change in the decisions of this court. Perhaps because this issue has never been raised. Perhaps because we're in a new world. But in this situation, the statute says the term is based on 154. That term cannot be extended. And let's also remember here there was a terminal disclaimer on the 375 patent. The 375 was terminally disclaimed in accordance with the MPEP at that time. And so the procedure was followed. The terminal disclaimer was followed. But the 375's expiration date is way earlier than the 483. Yes, it is. So it's almost a futile event. I disagree, Your Honor, because there are two reasons that we look at double patenting. One relates to term extension and the second relates to common ownership. And by following the terminal disclaimer, one had that requirement that they would be commonly owned. So that terminal disclaimer did have an impact on the patent, on the 375 patent. The simple fact of the matter is that the property right principle here is extremely important. Because the statute, pre-gap and post-gap, always dealt with the property right. And the term of the patent is defined by when it issues and when it expires. To go ahead post hoc and say another patent can issue in the future and that future patent can suddenly take back term, shorten term, is contrary to the statute. That's why, whether it's 17 years from issuance or you figure out the date being from the date of issuance to expiration, you must use the first issued patent for double patenting. Just so I understand, if we went your way, then there could be five patents with five different expiration dates, all that are obvious variations of each other, right? You have five sets of claims and five different patents where you choose what priority date you want to claim in all five patents. And if all five patents have different priority dates, we're talking post-gap, then you could have the last filed application that results into a patent to have the furthest out expiration date. Is that right? I don't think so. I think you have one patent that issues. It's the reference patent. And everything else can't be late, can't go beyond that date. I think that's pretty simple double patenting law. Patent one issues. It's got its term. Second patent, third patent, that we'll assume are obvious based on that. They all have terminals of scale claimers. They cannot extend past the date of the first property right. But if you control the issuance of the first patent to the point where it issues last, that's how you get the staggered expiration date. It can't issue last. The first issued patent is always the first issued patent. There has to be a first issued patent. No, but the earliest priority date can be the last issued patent through a chain of continuation applications. In theory. You can go ahead and figure out a way to manipulate any system if that's what you're asking. That's what I'm asking. I don't know any system in or out of patent law that could be subject to somebody doing something. However, the patent law is pretty clear. You get a first patent and it issues. Whether it's filed first, last, or whatever, it issues. Everything else is tied to that. And so why does it matter when the other ones were filed? They will be stuck with that date. And we would have to assume that the patent office is no longer paying any attention. That something is going to be dragged on endlessly over here. And then something else is going to come out here. But regardless of how it occurs, there will be a property right and nothing will be extended from that. That's just the way it is. The patent, we need to remember in this pre-post-gap world, this intervening world, where we are. The statute took into account that there would be a change 17 years from issuance, 20 years from filing for figuring out term. And in fact, during the intervening period, in 154C, said, you get the choice. That didn't evidence having the smallest term possible. It said, you have the choice. And that's 154C. To allow applicants to take the benefit of this 20 years from filing situation, if it were better. Thank you, Ms. Ben-Ami. Mr. Lowe, you have a little less than two minutes.  May it please the Court. I just wanted to make a couple of quick points. One, there is no conflict with statute here. The only guarantee Gilead has, or for that matter, any other patentee, is that it gets one statutory term per invention, regardless of the exclusionary window they get, if any, after grant. And Gilead got all of that with respect to the 275 patent. But it got a patent that has an expiration date on it. That's its property right. That's correct, is it not? The problem is, they got two patents that claim overlapping subject matter. And when that happens, you have a situation where the common ownership policy comes into play and the different expiration dates, the staggered expiration dates. And I think Judge Chin was exactly right. Under their theory, you could have a situation with five duplicative patents and five different expiration dates. And the first would govern. The first issue would govern. All the rest. It would govern, but it wouldn't... But different from this case, they would know about it and they would have a chance to deal with those others, either changing them to make sure they were patentably distinct, or taking a terminal disclaimer. Two points on that. One, if the first issue had priority, is what I think they're arguing, then you would run afoul of the common ownership problem. You would run afoul of the public policy that allows the public to act on its assumption. We would have to essentially throw those policies out in this particular situation. And as far as the fairness point, I mean, the MPEP has clearly, at the time and now, has put them on notice that you cannot have multiply duplicative patents with different expiration dates. And it's the later issue... What was the notice at the time this occurred? Well, it's interesting. If notice is the important principle, they didn't get notice, right? No, it is in the MPEP. Let's think about the three versions that exist that are relevant. You have the pre-GAAP version that said allow whichever patent issue first. Everything that comes after that needs a terminal disclaimer. That's fully consistent with the policies that we've been talking about. Right after GAAP, that sixth edition was amended. And it said, well, now we're dealing with a mixture of pre- and post-GAAP cases. You still need a terminal disclaimer, for example, in the later filed application. And now that we're not dealing with that mixture of pre- and post-GAAP cases, the MPEP is even more clear than it says that every time you have the second filed application, you need a terminal disclaimer on that and you allow the first filed one to issue. That has put them and the rest of the public on notice since the GAAP change in 1995. Thank you, Mr. O'Connor. Thank you, Your Honor.